FOR PUBLICATION



**FILED**
Mar 15 2012, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**MICHAEL H. MICHMERHUIZEN**
**PATRICK G. MURPHY**
Barrett & McGagny, L.L.P.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:

**CHAD L. RAYLE**
**MICHAEL M. YODER**
Yoder & Kraus, P.C.
Fort Wayne, Indiana

**RONALD GLEN THOMAS**
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRAD A. ALTEVOGT, et al., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 44A03-1106-MI-237 |
| | ) | |
| DENNIS L. BRAND, et al., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE LaGRANGE CIRCUIT COURT
The Honorable J. Scott VanDerbeck, Judge
Cause No. 44C01-0811-MI-066

**March 15, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Several owners of lots in the Long Lake Park subdivision in LaGrange County ("the Plaintiffs")[1] filed a complaint in LaGrange Circuit Court seeking to quiet title to a portion of land that is situated between the Plaintiffs' homes and the shore of Big Long Lake. The Defendants,[2] who are all owners of back lots in the subdivision, filed a motion for summary judgment which the trial court granted. The Plaintiffs appeal and argue that the trial court erred when it entered summary judgment denying the Plaintiffs' claims.

We affirm.

**Facts and Procedural History**

The parties in this case all own lots in the Long Lake Park subdivision in LaGrange County. This subdivision was platted in 1932 by Lee Hartzell, who owned land adjacent to Big Long Lake. On June 12, 1932, Hartzell recorded the plat for Long Lake Park ("the Hartzell Plat"). The Hartzell Plat contained certain provisions concerning the use of Long Lake Park, specifically:

> Each lot owner shall be entitled to an easement on the Lake Shore six feet in width for a boat landing which easement shall be in front of the block in which the lot is located and the easement shall bear the same number as the lot it is for and the easements shall be numbered consecutively from North to South.

Appellant's App. p. 1279.

---

[1] The named plaintiffs included Michael and Lana Ashley, Lloyd and Karen Bickel, Carl and Margaret Mosser, Phillip and Karen Lake, Debra and Cozmas Parkison, Kathleen R. Smith (as trustee for the Kathleen R. Smith Trust), Roger and Beverly Meyer, Paige Liggett (as trustee of the Paige and Carol Liggett 2005 Trust), Brad and Margaret Altevogt, Kara Allis, John D. Gross, Sylvia Gross, Lynn E. Fisher and Betty J. Fisher (as trustees of the Betty J. Fisher Revocable Trust), Max S. Myers, Mary Jane Johnston, Longview Financial, LLC, James R. and Lora L. Morris, Ryan and Kelli Patterson, William Plant (as trustee of the Jerome, John, Edward, and William Plant Trust), Lawrence J. and Patricia L. Skilbred, James A. and Patricia A. Williams, and Thomas and Regina Hare.

[2] The named defendants are too numerous to list, but are included on the caption of the Plaintiffs' Third Amended Complaint. See Appellant's App. p. 1236-38.

2

The Hartzell Plat set out Long Lake Park as a series of blocks each comprised of several lots. None of the platted lots extend to the shore of Big Long Lake. Instead, located between the blocks and the lakeshore is a strip of land referred to on the Hartzell Plat as "the Indian Trail." There are also various drives located between the blocks. The Hartzell Plat provides that "all drives, alleys, and walks are for the use of the owners of the lots and their guests[.]"[3] Id.

The Plaintiffs in this case are all front-lot owners, whose lots are situated near the lake with only the Indian Trail separating their lots from the lakeshore. The Defendants are all back-lot owners who claim that their access to the lake would be impaired if the Plaintiffs prevailed in their claim of adverse possession of those parts of the Indian Trail in front of their respective lots and who claim the right to use the Indian Trail under the language of the Hartzell Plat. A map of the relevant portion of Long Lake Park is set forth below:[4]

---

[3] Hartzell died testate in 1955, and his will contained no specific conveyance of any part of the Indian Trail. The residuary beneficiary of Hartzell's estate was the Indiana Masonic Home in Franklin, Indiana, which filed a disclaimer of interest in the present action.

[4] The map depicted below is a rough recreation of the maps included in the record before us, none of which are reproduced clearly enough to allow us to include them in this opinion. This map is included only as a visual aid to the reader.



According to the language of the Plat, each lot owner had a six-foot easement in front of their respective block, running north-to-south. For example, in Block 7, the owner of Lot 65 had a six-foot easement starting at the lakeshore on the northern end of Block 7, with each subsequent lot owner having another six-foot easement directly to the south of the preceding easement. Despite these easements, over the intervening years, the front-lot owners built boat docks or piers on the shoreline immediately in front of their lots, and the back-lot owners typically built their boat docks on the areas of the shoreline that were located near the ends of the drives separating the blocks. The front-lot owners also built seawalls to prevent erosion to that part of the Indian Trail that was located

4

directly between their lots and the lakeshore and cared for this area as part of their respective yards.[5]

On November 18, 2008, the Plaintiffs, all of whom are front-lot owners, filed a complaint against the Defendant back-lot owners seeking to quiet title to those portions of the Indian Trail located between the front lots and Big Long Lake. On September 15, 2010, those Plaintiffs represented by attorney Patricia Martin[6] and those represented by Barrett & McNagny, LLP[7] filed a third amended complaint. The Defendants subsequently filed their answer to this amended complaint. On February 1, 2011, the Barrett & McNagny Plaintiffs filed a motion for summary judgment. The Defendants also filed a motion for summary judgment on that date. After various filings by both parties, the trial court eventually held a hearing on the pending motions on April 12, 2011. On May 6, 2011, the trial court entered summary judgment in favor of the Defendants and against the Plaintiffs. The Barrett & McNagny Plaintiffs now appeal. Additional facts will be provided as necessary.

---

[5] The LaGrange County Commissioners assert that the County has an interest in a public way and easement over the Indian Trail, but have disclaimed any fee ownership of the Trail. The County never assumed any maintenance or improvement obligations toward the Trail. And the County has not opened the trail to any use to those outside of Long Lake Park. The County asserted that the public way and easement is limited in use and restricted to pedestrian traffic, placement of public utilities, and is not suitable to be opened for public improvements such as vehicular traffic. The County was not a party below and is not a party on appeal.

[6] Attorney Martin represented the following Plaintiffs: Brad and Margaret Altevogt, Edward and Betty Fisher, John and Sylvia Gross, Mary Johnson, John Kobelt, Long View Financial LLC, James and Lora Morris, Ryan and Kelli Patterson, Lawrence and Patricia Skilbred, and James and Patricia Williams. These Plaintiffs did not file a notice of appeal.

[7] Barrett & McNagny represents the following Plaintiffs: Michael and Lana Ashley, Lloyd and Karen Bickel, Debra Ann Cozmas, Phil and Karen Lake, the Liggit Trust, Roger and Beverly Meyers, Carl and Margaret Mosser, and the Kathlees Smith Trust. These Plaintiffs ("the Barrett & McNagny Plaintiffs") are the appellants in the present appeal.

## I. Summary Judgment

Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled. "A trial court should grant a motion for summary judgment only when the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Kumar v. Bay Bridge, LLC, 903 N.E.2d 114, 115 (Ind. Ct. App. 2009) (quoting Ind. Trial Rule 56(C)). The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. Id.

"An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." Dugan v. Mittal Steel USA Inc., 929 N.E.2d 184, 186 (Ind. 2010). But a de novo standard of review applies where the dispute is one of law rather than fact. Id. We examine only those materials designated to the trial court on the motion for summary judgment. Kumar, 903 N.E.2d at 115. Our standard of review is not altered by the fact that the parties filed cross motions for summary judgment. Id.

Here, the trial court made findings of fact and conclusions of law in support of its entry of summary judgment. Although we are not bound by the trial court's findings and conclusions, they aid our review by providing reasons for the trial court's decision. Id. We must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record. Id.

## II. Dedication

The Plaintiffs first claim that the Indian Trail was dedicated as a public easement subject to the "underlying fee ownership of each Lakefront [sic] Owner." Appellant's Br. at 27. Simply put, the Plaintiffs claim that the Indian Trail was dedicated as a public easement adjacent to the lake and that their fee ownership should therefore extend to the lakeshore. The trial court did not consider this argument because it was not raised in the pleadings. The Plaintiffs do not directly deny that this claim was not presented in their complaint. Instead, they claim that their third amended complaint sought to quiet title to the Indian Trail and that this theory supports their claim of title. The Plaintiffs, however, fail to cite any support for this argument, nor do they develop this argument any further. We therefore consider this argument waived.[8] Waiver notwithstanding, the Plaintiffs' argument fails.

The Plaintiffs note that the dedication of trails, alleys, drives, and roads for public use can be accomplished by common law dedication or statutory dedication. See Poznic v. Porter County Dev. Corp., 779 N.E.2d 1185, 1192 (Ind. Ct. App. 2002) (addressing both common law and statutory dedication). The Plaintiffs concede that there is insufficient evidence of Hartzell's intent to establish common-law dedication, but argue that there is evidence sufficient to establish a statutory dedication. We disagree. The

---

[8] We further note that the Plaintiffs themselves cite several authorities for the proposition that "[a] judgment that does not conform to the pleadings" is improper. See Appellant's Br. at 35 (citing Holmes v. Randolph, 610 N.E.2d 839, 843 n.11 (Ind. 1993); Gary Cmty. Sch. Corp. v. Serv. Emps. Int'l, 839 N.E.2d 1191, 1195-96 (Ind. Ct. App. 2005); Mitchell v. Stevenson, 677 N.E.2d 551, 562 (Ind. Ct. App. 1997)). Although they cite these cases in support of their argument that the trial court erred in considering the Defendants' argument of co-tenancy, which the Plaintiffs claim was not properly presented in the Defendants' pleadings, it is equally applicable to their claim of dedication, which was not presented in the Plaintiffs' pleadings.

Hartzell Plat did not contain any dedication for *public* use. Instead, it clearly states that "all drives, alleys, and walks *are for the use of the owners of the lots and their guests*[.]" Appellant's App. p. 1279. Even the statute the Plaintiffs claim was in effect at the time the Hartzell Plat was recorded provided that a plat was required to show "the proper *public* grounds, streets and alleys properly marked[.]" Burns Code Ann. § 8900 (1914).

The facts established are also distinguishable from those cases cited by the Plaintiffs where a plat failed to expressly dedicate the rights-of-way depicted on the plat. Here, the Hartzell Plat expressly stated the contrary, i.e., that the drives, alleys, and walks were *not* for public use, but for the use of the lot owners and their guests. Accordingly, we cannot say that the trial court erred in failing to accept the Plaintiffs' argument that there was a public dedication of the Indian Trail.

### III. Adverse Possession

The Plaintiffs next assert title in portions of the Indian Trail by way of adverse possession. As we recently explained in Roberts v. Feitz, 933 N.E.2d 466, 478 (Ind. Ct. App. 2010), "[t]he traditional common law elements of adverse possession required the claimant to prove the possession was (1) actual; (2) visible; (3) open and notorious; (4) exclusive; (5) under claim of ownership; (6) hostile; and (7) continuous for a statutory period of time." Id. at 478 (citing Fraley v. Minger, 829 N.E.2d 476, 485 (Ind. 2005)). In Fraley, however, our supreme court rephrased the elements of adverse possession, stating that "the doctrine of adverse possession entitles a person without title to obtain ownership to a parcel of land upon clear and convincing proof of control, intent, notice, and duration." 829 N.E.2d at 486. These elements were defined in Fraley as follows:

8

(1) Control—The claimant must exercise a degree of use and control over the parcel that is normal and customary considering the characteristics of the land (reflecting the former elements of "actual," and in some ways "exclusive," possession);

(2) Intent—The claimant must demonstrate intent to claim full ownership of the tract superior to the rights of all others, particularly the legal owner (reflecting the former elements of "claim of right," "exclusive," "hostile," and "adverse");

(3) Notice—The claimant's actions with respect to the land must be sufficient to give actual or constructive notice to the legal owner of the claimant's intent and exclusive control (reflecting the former "visible," "open," "notorious," and in some ways the "hostile," elements); and

(4) Duration—The claimant must satisfy each of these elements continuously for the required period of time (reflecting the former "continuous" element).

Id.[9] These elements must be satisfied for the statutory period of ten years. Hoose v. Doody, 886 N.E.2d 83, 92 (Ind. Ct. App. 2008) (citing Ind. Code § 34-11-2-11). And they must be established by clear and convincing evidence. Fraley, 829 N.E.2d at 483. The failure to establish any one element of an adverse possession claim defeats the claim. Daisy Farm Ltd. P'ship v. Morrolf, 915 N.E.2d 480, 487 (Ind. Ct. App. 2009).

A. *Control*

As set forth in Fraley, the claimants must exercise a degree of use and control over the land that is normal and customary considering the characteristics of the land. 829 N.E.2d at 486. Here, it is undisputed that the Plaintiff front-lot owners have always

---

[9] The Fraley court identified the elements of adverse possession to reflect a "simplified articulation" of the "essence of the common law doctrine." 829 N.E.2d at 486. But we have since recognized that this "'reformulation does not appear to affect the vitality of prior case law.'" Garriott v. Peters, 878 N.E.2d 431, 438 n.6 (Ind. Ct. App. 2007), trans. denied (quoting Chickamauga Props., Inc. v. Barnard, 853 N.E.2d 148, 153 n.11 (Ind. Ct. App. 2006)).

permitted others, including the back-lot owners, to walk across that part of the Indian Trail that they now claim by adverse possession. Indeed, the Plaintiffs have acknowledged the existence of a "walking easement" across the Indian Trail. See Appellant's App. pp. 79, 146-47, 171, 177, 198-99, 204, 260 (reproducing affidavits of the Plaintiffs in which they aver, "We have no objection to owners in Big Long Lake walking across the Indian Trail in front of our property and have always believed a walking easement existed over the Indian Trail for those in Long Lake Parks.").

This admission that others have the right to use the Indian Trail is inconsistent with a claim of adverse possession and is fatal to the Plaintiffs' current claim of ownership. See Nodine v. McNerney, 833 N.E.2d 57, 66 (Ind. Ct. App. 2005) (noting that adverse possession claimants' recognition of the rights of other lot owners to use the disputed areas showed that were not exerting exclusive control thereof), clarified on reh'g, 835 N.E.2d 1041; see also Rieddle v. Buckner, 629 N.E.2d 860, 862 (Ind. Ct. App. 1994) (noting that possession of land claimed by adverse possession is not exclusive where the claimant occupies the land in common with a third party).

B. *Intent*

The claimants must also demonstrate intent to claim full ownership of the tract superior to the rights of all others. Fraley, 829 N.E.2d at 486. Again, it is undisputed that the Plaintiffs acknowledge that other lot owners have an easement to permit them to walk on the Indian Trail to access the lake. This does not support their claim of intent to claim "full ownership" of the tract superior to the rights of all others. See 3 Am. Jur. 2d Adverse Possession § 72 (2012) (noting general rule that "any use of premises by the

10

public that indicates a claim of common or public right will prevent the acquisition of title by adverse possession of the premises by any person, because if there is such use, the possession is not exclusive."). Here, by correctly acknowledging the rights of the other lot owners to use the Indian Trail, the Plaintiffs cannot establish that they intended to exercise full legal ownership of the land in question. See Nodine, 833 N.E.2d at 66 (claimants' recognition of the rights of others to use the disputed area of land demonstrated that they did not intend to claim full ownership of the land).

C. *Notice*

The claimants' actions with respect to the land must also be sufficient to give actual or constructive notice to the legal owner of the claimants' intent and exclusive control. Fraley, 829 N.E.2d at 486. Here, the Plaintiffs make much of the fact that they have placed sidewalks on the Indian Trail, built seawalls on the shoreline, and taken care of the Indian Trail as if it were their lawn. But such improvements are not inconsistent with the use of the Indian Trail by others. This is similar to the facts of Nodine, supra, where the claimants argued that their construction of a seawall was a hostile possession for purposes of establishing adverse possession. We disagreed, contrasting the construction of a seawall with the erection of a fence. 833 N.E.2d at 66-67. Whereas the erection of a fence should alert others that property is being adversely claimed, seawalls can serve many purposes, including making the lake accessible, which is consistent with the rights of all of the lot owners. Id. at 67. Thus, "[t]he existence of a seawall would not necessarily alert those who have an interest in the property that the property is being

11

adversely claimed; the seawalls did not serve to exclude other lot owners from the disputed areas." Id.

The same is true here. The Plaintiffs' construction of seawalls, sidewalks, and piers is consistent with the use permitted all lot owners. As this court noted in Maxwell v. Hahn, 508 N.E.2d 555, 558 (Ind. Ct. App. 1987), "[c]o-owners of easements possess the rights to construct, alter or improve the easement or exercise their rights in any way to perpetuate their enjoyment of the easement, as long as their actions do not interfere with their co-owners' rights to enjoy the easement." Thus, it is consistent with the rights of all lot owners to place improvements on the Indian Trail, so long as they do not interfere with the use and enjoyment of the other lot owners. See id. at 558-59 (erection of piers and docks adjacent to the common ground and the lake was not inconsistent with the rights of other lot owners to use the common ground).

It is also undisputed that the Plaintiffs never erected any fences or other barriers that would prevent others from accessing and using those parts of the Indian Trail they now claim. Nor did they place any sign or other notice indicating that they were claiming the Indian Trail as their own until 2005.

The Plaintiffs also claim that they were told before they purchased their respective lots that the lots were "lake front lots," and that they would not have purchased their lots had they known that they did not own the land adjacent to the lake. But the Hartzell Plat clearly shows that the front-lot owners' lots do not extend all the way to the lakeshore. Instead, the Indian Trail separates their lots from the lake. Several of the Plaintiffs also had surveys of their lots conducted as part of the process of securing building permits,

and these surveys clearly show that the boundaries of the lots do not extend to the lakeshore. Thus, the front-lot owners had, at the very least, constructive knowledge that their lots did not extend to the lakeshore.

D. *Duration*

The <u>Fraley</u> court held that the claimants must satisfy each of these elements continuously for the required period of time. 829 N.E.2d at 486. In Indiana, the statutory period is ten years. <u>See</u> <u>Hoose</u>, 886 N.E.2d at 92 (citing I.C. § 34-11-2-11). Here, the Plaintiffs did not establish all of the required elements. We therefore do not need to consider whether they satisfied them for the required ten years.[10]

E. *Summary*

Looking at the designated evidence, we must agree with the trial court that the Plaintiffs did not establish all of the elements of adverse possession. There is undisputed evidence that they did not exclude others from using the Indian Trail and they even admit that others have the right to use the Indian Trail for limited purposes. This, combined with the fact that they never erected any barriers or other impediments that would have given reasonable notice of their claim of possession, defeats the Plaintiffs' claim of title by adverse possession.

### III. Co-Tenancy

The Plaintiffs also claim that the trial court erred in concluding that all the lot owners were co-tenants of the Indian Trail. The Plaintiffs argue that this theory was not

---

[10] Similarly, we need not address the question of whether the Plaintiffs met the requirement of paying property taxes because they did not establish the other necessary elements of adverse possession.

pleaded by the Defendant back-lot owners and that the trial court could therefore not consider it. Our review of the trial court's order on summary judgment, however, does not support the Plaintiffs' contention that the trial court concluded that the lot owners were co-tenants.

The trial court, in its findings of fact, did state that Hartzell "by reason of the specific language in the restrictions, intended to grant to all lot owners in Long Lake Park, as co-tenants in the ownership and use of all drives, alleys, and walkways, including Indian Trail, described on the recorded Plat." Appellant's App. p. 55. But in its conclusions of law, the trial court wrote:

> While it may be disputed as to who owns the fee interest in the real estate *(Yoder & Kraus Defendants claim all Lot Owners in the subdivision are tenants-in-common of the roads, alleys, and walkways)*, it is clear that the conduct of the Plaintiffs did not put anyone on notice of their claim to legal ownership. It is undisputed that Plaintiffs had a right to use the Indian Trail and Plaintiffs did nothing more than use the Indian Trail. Therefore, the Plaintiffs cannot establish the element of notice as a matter of law.

Id. at 59-60 (emphasis added). The court failed to further mention co-tenancy in its conclusions.

We do not agree with the Plaintiffs that the trial court's order means that title to the Indian Trail has been quieted in all lot owners as co-tenants. Instead, we read the trial court's conclusion to mean that the question of who owns the fee interest in the Indian Trail is disputed, while recognizing that resolution of that question is unnecessary to conclude that the Plaintiffs did not establish title by adverse possession. What is clear is that all owners have an easement to use the Indian Trail, regardless of the fee owner, and that the Plaintiffs have not established title by adverse possession.

14

**Conclusion**

The trial court did not err in rejecting the Plaintiffs' claim of title of the disputed land by public dedication because the Plat did not dedicate the Indian Trail to the public, but instead indicated that the Indian Trail was for the use of the lot owners and their guests. The trial court also properly concluded that the Plaintiffs had not established all of the elements of adverse possession. Lastly, we do not read the trial court's order as concluding that all lot owners were co-tenants of the Indian Trail. Therefore, the trial court properly granted summary judgment in favor of the Defendant back-lot owners.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.