**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 04 2014, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**DAVID W. CRAIG**
**SCOTT A. FAULTLESS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD K. SHOULTZ**
**EDWARD D. THOMAS**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIFFANY THOMPSON, JASON THOMPSON, and CASSIE THOMPSON | ) ) ) ) | |
| Apellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 32A05-1403-CT-131 |
| FIELDS GUTTER & SIDING, INC., PAMELA SUE FIELDS, and MICHAEL C. FORD, JR. | ) ) ) ) | |
| Appellees-Defendants. | ) ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephanie D. LeMay-Luken, Judge
Cause No. 32D05-1203-CT-42

**August 4, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Tiffany Thompson, Jason Thompson, and Cassie Thompson ("the Thompsons") appeal the Hendricks Superior Court's grant of summary judgment in favor of Fields Gutter & Siding, Inc., Pamela Fields, and Michael Ford.

We affirm.

**Facts and Procedural History**

Fields Gutter & Siding ("FGS") is a business owned by Frank Fields and Pamela Fields ("the Fieldses"). FGS, which is operated from the Fieldses' residence, employs ten to fifteen people at a time. Frank Fields is the president of FGS and Pamela Fields is the officer manager. Michael Ford ("Ford") has been employed by FGS since 2000 as an installer of gutters, soffit, and siding.

On December 20, 2011, the Fieldses held a holiday party for FGS employees at a Red Lobster restaurant in Avon, Indiana. The party began at 1:00 p.m. and ended around 3:00 p.m. On that day, Ford's work shift ended around 11:00 a.m. Ford arrived at the restaurant around 1:00 or 1:30 p.m. All of the FGS employees sat together at one table in the restaurant, and the Fieldses asked the employees not to enter the bar area. While at the party, Ford consumed two margaritas served by Red Lobster bartenders. Ford left the party around 2:30 or 3:00 p.m. and drove to his home in Indianapolis, thirty-five to forty minutes away from the restaurant. After showering, Ford drove to a nearby liquor store and purchased a twelve-pack of beer and a pint bottle of tequila. He spent the following two hours drinking one or two of the beers and the entire bottle of tequila while "just driving around." Appellant's App. p. 97.

2

Around 8:30 p.m. on December 20, 2011, approximately six hours after Ford left the FGS holiday party, Tiffany Thompson and her daughter, Cassie, were driving westbound on U.S. Highway 40, a four-lane highway with a grass median. Ford, driving the wrong way in Thompson's lane of travel, struck Thompson's vehicle, seriously injuring Thompson and her daughter. At the time of the collision, Ford's license was suspended, his vehicle was not registered, and he had no automobile insurance coverage. At the accident scene, Ford failed a field sobriety test administered by law enforcement and a blood alcohol test revealed that his blood alcohol concentration was .20. Ford later pleaded guilty to operating a vehicle while intoxicated causing serious bodily injury.

On March 20, 2012, the Thompsons filed a complaint in Hendricks Superior Court against GMRI, Inc., d/b/a Red Lobster and Ford. Two months later, the Thompsons filed an amended complaint adding FGS as a defendant, alleging that FGS was liable for Ford's negligent acts under the theory of *respondeat superior*, and that FGS breached its common law duty to use reasonable care. The same day, the trial court granted the Thompsons' joint stipulation of dismissal as to GMRI, Inc.

On August 15, 2013, FGS filed a motion for summary judgment, arguing that it breached no duty to the Thompsons. The trial court agreed and granted FGS's motion.

The Thompsons now appeal.

**Discussion and Decision**

Our standard for reviewing a trial court's order granting a motion for summary judgment is well settled: a trial court should grant a motion for summary judgment only when the evidence shows that there is no genuine issue as to any material fact and that

3

the moving party is entitled to a judgment as a matter of law. Altevogt v. Brand, 963 N.E.2d 1146, 1150 (Ind. Ct. App. 2012) (citing Ind. Trial Rule 56(C)). The trial court's grant of a motion for summary judgment comes to us cloaked with a presumption of validity. Id. "'An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.'" Id. (quoting Dugan v. Mittal Steel USA Inc., 929 N.E.2d 184, 186 (Ind. 2010)). However, a de novo standard of review applies where the dispute is one of law rather than fact. Id. On appeal, we examine only those materials designated to the trial court on the motion for summary judgment, and we must affirm the trial court's entry of summary judgment if it can be sustained on any theory or basis in the record. Id.

The Thompsons argue that "FGS owed a duty of reasonable care in organizing and supervising its Christmas party in order to prevent an employee who is a known alcoholic and habitual drunkard from consuming drinks that triggered a relapse and led to his inebriation." Appellant's Br. at 26. They maintain that FGS, by providing Ford with two margaritas at Red Lobster, "set in motion a chain of events leading to a dangerous intoxicated alcoholic without insurance or a driver's license causing destruction and harm to others." Id. at 26-27.

A defendant is liable to a plaintiff for the tort of negligence if (1) the defendant has a duty to conform its conduct to a standard of care arising from its relationship with the

4

plaintiff, (2) the defendant has failed to conform its conduct to that standard of care, and (3) an injury to the plaintiff was proximately caused by the breach. Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C., 929 N.E.2d 722, 726 (Ind. 2010). The Thompsons' claim fails each of these elements.

In support of their argument that FGS breached its duty of reasonable care, the Thompsons cite Gariup Construction Company, Inc. v. Foster, 519 N.E.2d 1224 (Ind. 1988). In Gariup, a construction company hosted a holiday party for its employees on company premises and furnished the food and refreshments, including alcoholic beverages. Paul Orner, the company's office manager attended the party, drank three or four beers and then, during the roughly thirty minutes before he left the party, consumed six to eight shots of eighty-proof whisky during a drinking game. Some forty minutes after Orner left the party, he drove across a highway median and struck Foster's vehicle head-on, causing serious injury to Foster. The trial court granted a judgment in favor of Foster against the construction company. Our supreme court affirmed, holding that the construction company had a duty to exercise "ordinary and reasonable care" in supervising its party and that the company breached its duty by allowing Orner to participate in a drinking game, become intoxicated, and then operate his vehicle. Gariup, 519 N.E.2d at 1229.

The facts of the present case, however, are easily distinguishable from the facts in Gariup. Here, the FGS holiday party was held away from company premises, at a Red Lobster restaurant, where employees were instructed to stay away from the bar area. Ford consumed two margaritas over the course of two hours and the Thompsons failed to

present any evidence that Ford was noticeably intoxicated while at the party or at the time he left the party. In stark contrast to the employer in Gariup, FGS and the Fieldses clearly exercised ordinary and reasonable care in the organization and conduct of their holiday party and with proper regard to third-party motorists, like Thompson, Ford or others employees might encounter on the road upon leaving the party.

Furthermore, even if we were to conclude that FGS breached its duty by allowing Ford, a person who has struggled for many years with alcoholism, to consume even one alcoholic beverage, it is apparent that this breach was not a proximate cause of the Thompsons' injuries. The collision occurred approximately six hours after Ford left the party, during which time he returned to his home, showered, drove to a liquor store where he bought beer and tequila and then consumed the entire pint bottle of tequila and one or two beers while he was operating his motor vehicle. This conduct was not reasonably foreseeable to FGS or the Fieldses. Simply said, Ford's conduct after the holiday party was an intervening and superseding proximate cause of his collision with Thompson. See Merchants Nat. Bank v. Simrell's Sports Bar & Grill, Inc., 741 N.E.2d 383 (Ind. Ct. App. 2000) (holding that, irrespective of whether tavern breached its statutory duty under Dram Shop Act by providing alcoholic beverages to intoxicated person, any such breach was not proximate cause of resulting harm to its patron, since third-party's act of shooting patron was intervening criminal act that broke causal chain between tavern's alleged negligence and patron's death, and thus, tavern was not liable for patron's death under Dram Shop Act); see also Elder v. Fisher, 247 Ind. 598, 605, 217 N.E.2d 847, 851-52 (1966) (a seller of liquor may be liable for injury resulting from the sale of alcohol to

6

"minors or drunks who are particularly susceptible to the use of liquor . . . if the circumstances should have warned him that his sale would create an unreasonable risk.").

The Thompsons further argue that FGS is liable for the injuries caused by Ford based on the theory of *respondeat superior*. According to the doctrine of *respondeat superior*, an employer, who is not liable because of his own acts, can be held liable "for the wrongful acts of his employee which are committed within the scope of employment." Sword v. NKC Hosps., Inc., 714 N.E.2d 142, 147 (Ind. 1999). An employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer. Konkle v. Henson, 672 N.E.2d 450, 456 (Ind. Ct. App. 1996). Liability will attach where an employee acts partially in self-interest but is still "partially serving his employer's interests." City of Fort Wayne v. Moore, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999), trans. denied.

The proper test is whether the employee's actions were at least for a time authorized by his employer. Stropes v. Heritage House Children's Ctr., 547 N.E.2d 244, 250 (Ind. 1989). However, if it is determined that none of the employee's acts were authorized, there is no *respondeat superior* liability. City of Fort Wayne, 706 N.E.2d at 607. Acts for which an employer is not responsible are those done on the employee's own initiative with no intention to perform it as part of or incident to the service for which he is employed. Stropes, 547 N.E.2d at 247.

The Thompsons argue that *respondeat superior* applies here because "[t]he presence of the officers of FGS at the Christmas party demonstrates its control over the Christmas party" and because FGS exerted control over its employees by "directing them

7

to sit together, not go into the bar area, and limiting the number of alcoholic beverages that could be ordered." Appellant's Br. at 27. This is a complete misapplication of the doctrine of *respondeat superior.*

Under *respondeat superior,* the relevant question is whether Ford was acting within the scope of his employment *at the time of the accident.* See Dillman v. Great Dane Trailers, Inc., 649 N.E.2d 665, 668 (Ind. Ct. App. 1995). Here, it is undisputed that the collision occurred approximately six hours after Ford left the FGS holiday party and after Ford consumed many additional alcoholic beverages. The Thompsons have not alleged that there was an employment-related reason for Ford to drive his personal vehicle while drinking beer and a bottle of tequila. The accident did not occur within a time or at a place where Ford would reasonably be fulfilling his duties as an FGS employee. It is apparent, then, that at the time of the accident, Ford was not acting within the scope of his employment. See City of Fort Wayne v. Moore, 706 N.E.2d 604 (Ind. Ct. App. 1999) (concluding that police officer was not acting within scope of his employment with city when he stopped motorist outside city's corporate limits and then assaulted motorist, and thus city could not be liable for officer's actions under theory of *respondeat superior*, where officer was off-duty at time of incident, was driving his personal vehicle and was not wearing police uniform, and city's police officers were not authorized to make traffic stops outside city's corporate limits, out-of-uniform or in unmarked police car). Because no reasonable trier of fact could determine from the evidence that Ford was acting within the scope of employment at the time that he caused

the accident, we conclude that the trial court did not err in granting summary judgment in favor of FGS under the doctrine of *respondeat superior*.

To the extent that the Thompsons argue that FGS should be liable under Indiana's Dram Shop statute,[1] we disagree. The Dram Shop statute provides that "[i]t is unlawful for a person to sell, barter, deliver, or give away an alcoholic beverage to another person who is in a state of intoxication if the person knows that the other person is intoxicated." Ind. Code § 7.1-5-10-15. To "furnish" means to "barter, deliver, sell, exchange, provide, or give away." Ind. Code § 7.1-5-10-15.5. A person who furnishes alcohol to another person is not liable for damages resulting from the second person's intoxication unless the furnisher "had actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time the alcoholic beverage was furnished" and "the intoxication of the person to whom the alcoholic beverage was furnished was a proximate cause of the death, injury, or damage alleged in the complaint." Id.

We have already noted that there was no evidence that the Fieldses had actual knowledge that Ford was noticeably intoxicated when he left the party. We have also already determined that a reasonable person could not conclude that the two margaritas served to Ford at the FGS party were a proximate cause of the Thompsons' injuries. Therefore, any claim asserted by the Thompsons under Indiana's Dram Shop statute would fail as a matter of law.

---

[1] In their reply brief, the Thompsons assert that their claim against FGS "is based upon Indiana's common law, not the Dram Shop Act." However, many of the Thompsons' arguments contain language similar to that found in the Dram Shop statute.

9

**Conclusion**

For all of these reasons, we conclude that the trial court did not err when it granted summary judgment in favor of FGS.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.